**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| AMANDA FITTON, on behalf of herself and all others similarly situated, | Case No. 3:23cv1559 |
| Plaintiff, | |
| v. | |
| PINNACLE PROPANE, LLC, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................................... 2

III.  SUMMARY OF SETTLEMENT ............................................................................... 4

  A.   The Settlement Class............................................................................................... 4

  B.   Settlement Benefits ................................................................................................. 4

  C.   Notice, Fees, Costs, and Service Awards ............................................................... 6

IV.   LEGAL STANDARD.................................................................................................. 7

V.    ARGUMENT ............................................................................................................... 9

  A.   The Settlement is Fair, Reasonable, and Adequate.............................................. 9

    1.   Plaintiff and Settlement Class Counsel Provided Excellent Representation. ............... 10

    2.   The Settlement is the product of serious, informed, arm's-length negotiations. .......... 11

    3.   The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.................................................................................................................. 12

    4.   The State of Litigation and the Available Discovery..................................................... 12

    5.   The Settlement Terms Appropriately Balance the Merits of Plaintiff's Claims and the Likelihood of Success with the Attendant Risks. ................................................. 13

    6.   Class Counsel and Plaintiff Believe the Settlement is in the Settlement Class's Best Interest.................................................................................................................. 16

    7.   The Effectiveness of the Proposed Method of Distributing Relief to the Class Supports Final Approval. .......................................................................................... 16

i

8.    The Settlement Treats Class Members Equitably Relative to Each Other. ................... 17

9.    Reaction of Settlement Class Members. ........................................................................ 17

B.    The Court Should Finally Certify the Settlement Class..................................................... 17

C.    The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary

Approval Order and Satisfied Rule 23 and Due Process. ......................................................... 20

VI.    CONCLUSION...................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) ............................................................. 12

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) .......................................................... 12, 13

*Baksh v. IvyRehab Network, Inc.*,
    No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) ........................................ 14

*Billittri v. Securities America, Inc.*,
    Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011)........ 21

*Burford v. Cargill, Inc.*,
    No. 05-0283, 2012 U.S. Dist. LEXIS 161292 (W.D. La. Nov. 8, 2012) ................... 9

*Corra v. ACTS Ret. Servs.*,
    No. 22-2917, 2024 U.S. Dist. LEXIS 500 (E.D. Pa. Jan. 2, 2024).......................... 14

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) .................................................... 9, 12, 16

*DeHoyos v. Allstate Corp.*,
    240 F.R.D (W.D. Tex. Feb. 21, 2007)........................................ 13, 14, 16

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
    807 F. App'x 752 (10th Cir.), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ......................................................................... 21

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125, 130 (5th Cir. 2005) .......................................................... 19

*Grimm v. American Eagle Airlines, Inc.*,
    No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014)............. 15

*Hapka v. Carecentrix, Inc.*,
    Case No. 2:16-cv-02372-KGG (D. Kan. Feb. 15, 2018)....................................... 20

*In re Corrugated Container Antitrust Litig.*,
    659 F.2d 1322 (5th Cir. 1981) ............................................................ 14

*In re Deepwater Horizon*,
    739 F.3d 790, 810–11 (5th Cir. 2014) ................................................... 18

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013).............................................................. 15

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d (S.D. Tex. 2012) ............................................................ 10, 11, 12

*Jenkins v. Raymark Industries, Inc.*,
    782 F.2d 468, 472 (5th Cir. 1986) ......................................................... 19

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................ 8, 9, 12, 16

*Linnins v. HAECO Ams., Inc.*,
    No. 16-cv-486, 2018 WL 5312193 (M.D.N.C. Oct. 26, 2018) ............................... 15

*Manchaca v. Chater*,
    927 F. Supp. 962 (E.D. Tex. 1996) ....................................................... 10

*Mowery v. Saint Francis Healthcare Sys.*,
    No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) ....................................... 14

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ....................................................................... 20

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620, 624 (5th Cir. 1999) ....................................................... 18

*Nelson v. Constant*,
    2020 WL 5258454 ........................................................................ 18

*ODonnell v. Harris Cnty., Texas*,
    No. CV H-16-1414, 22019 U.S. Dist. LEXIS 151159 (S.D. Tex. Sept. 5, 2019) ............ 8

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ...................................................................... 11

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir. 1982) ........................................................... 13

*Pettway v. Am. Cast Iron Pipe Co.*,
    576 F.2d 1157 (5th Cir. 1978) ......................................................... 9, 16

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................... 20

*Purdie v. Ace Cash Express, Inc.*,
    No. 301CV1754L, 2003 U.S. Dist. LEXIS 22547 (N.D. Tex. Dec. 11, 2003) ............... 8

*Quintanilla v. A & R Demolition Inc.*,
    2007 WL 5166849 (S.D. Tex. May 7, 2007) ............................................... 11

*Reed v. General Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ............................................................. 8, 9, 12, 13, 14

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*,
  188 F.R.D. 433 (W.D. Tex. 1999) .............................................................. 13

*Stirman v. Exxon Corp.*,
  280 F.3d 554, 562 (5th Cir. 2002) .............................................................. 19

*Stott v. Capital Financial Services*,
  277 F.R.D. 316 (N.D. Tex. 2011) .......................................................... 16, 21

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ...................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 347 (2011) .......................................................................... 18

Plaintiff Amanda Fitton, by and through the undersigned Settlement Class Counsel[1], submits this Unopposed Motion for Final Approval of Class Settlement and Memorandum in Support, requesting final approval of this proposed class action settlement ("Settlement") pursuant to Fed. R. Civ. P. 23(e) on the terms set forth in the Settlement Agreement (Doc. 20-1, or "S.A.")[2] and for final certification of the Settlement Class.[3]

## I.     INTRODUCTION

If approved, the Settlement will successfully resolve the claims of approximately 10,000 individuals nationwide whose personal identifying information ("PII") was allegedly accessed, as the result of a cyberattack, by an unauthorized third party to certain computer systems of Defendant Pinnacle Propane, LLC ("Pinnacle") between November 28, 2022, and December 6, 2022. The Settlement negotiated on behalf of Plaintiff and the Class provided significant benefits to the Settlement Class through a $490,000 non-reversionary common fund. Under the Settlement, Settlement Class Members are eligible to recover compensation for up to $2,000 in out-of-pocket expenses, up to $40 per hour for up to six hours of lost time (up to $240 total), three years of credit monitoring protection, or alternatively, a $100 cash payment in lieu of all other aforementioned compensation and credit monitoring. Additionally, Pinnacle will undertake commitments to implement or maintain additional data security measures at its own expense (i.e. separate from the Settlement Fund) and separate from the other settlement benefits for the Settlement Class. The settlement fund also covers all costs of class notice and settlement administration, attorneys' fees and costs, and a Class Representative service award. This Settlement represents an excellent result

---

[1] The Court preliminarily appointed Plaintiff Amanda Fitton as the Settlement Class Representative and appointed Raina Borrelli of Strauss Borrelli PLLC (formerly Turke & Strauss LLP) as Settlement Class Counsel. Doc. 26.
[2] As modified by the First Stipulation to Amend the Settlement Agreement, Doc. 24.
[3] Unless otherwise defined, all capitalized terms have the meanings set forth in the Settlement Agreement .

for the Settlement Class and provides them with meaningful benefits to remedy the harm they have allegedly suffered, or will suffer, due to the Incident.

On June 26, 2024, this Court granted preliminary approval to the Settlement, finding that it is "fair, reasonable, and adequate," and ordered that notice to the Settlement Class Commence. Doc. 26, ¶3. The Court-ordered notice plan has since been successfully executed and the response to the Settlement has been overwhelmingly favorable, with no opt outs and no objections. Declaration of Settlement Administrator Regarding Notie ("Analytics Decl."), ¶13. This response weighs in favor of final approval. For the reasons detailed below, Plaintiff and Settlement Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiff respectfully requests the Court to finally approve the Settlement, approve the requested attorneys' fees, costs, and service award,[4] and enter a final judgment dismissing this case.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Pinnacle is a propane supplier based in Irving, Texas and claims to be the largest global liquefied petroleum gas distributor. Doc. 1 ("Compl."), ¶¶ 2, 18. Plaintiff alleges that Pinnacle collects PII an from its employees, including names and Social security numbers and, in doing so, agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. *Id*. ¶¶ 3, 4, 7.  However, on December 4, 2022, Pinnacle discovered that an unauthorized third party had accessed its computer network between November 28, 2022, and December 6, 2022. *Id*. ¶¶ 4, 23. Plaintiff alleges that her information was impacted in the Data Incident. In July 2023, Ms. Fitton sued Pinnacle to remediate the alleged harm the incident may

---

[4] *See* Motion filed at Doc. 28.

have caused her and the class, asserting six counts and demanding that Pinnacle reimburse the class's losses. *Id*. Prayer for Relief.

On September 7, 2023, Defendant filed a Motion to Dismiss, generally denying each and every cause of action asserted by Plaintiff in her Complaint. Doc. 11. Shortly after Defendant filed its Motion to Dismiss, the Parties agreed to explore mediation. No formal discovery was conducted. Instead, the Parties engaged early in Federal Rule of Evidence 408 communications and discovery. Doc. 28-2, ¶ 8.

Shortly thereafter, the parties agreed to mediate this case with Hon. Jay C. Ghandhi (Ret.), a mediator experienced in settling data security cases. *Id.* ¶ 9. After a lengthy mediation, conducted at arms-length with Judge Ghandhi's assistance, the parties were able to reach a settlement. *Id*. ¶ 10. From the start, the parties agreed they would not negotiate the proposed class's attorney fees or plaintiff's service award until they agreed on the settlement agreement's core terms, thus avoiding conflict between plaintiff and the class. *Id*.

On June 18, 2024, the parties attended the preliminary approval hearing in Dallas, Texas where the Court requested that the parties address certain items related to the Settlement and requested that Plaintiff file a supplemental declaration containing detailed time records in support of the attorney's fees contemplated by the proposed Settlement. Docs. 23, 24. A stipulation to amend the Settlement Agreement and a supplemental declaration in support of Plaintiff's unopposed motion for preliminary approval was subsequently filed by Plaintiff on June 21, 2024. Doc. 24.

On June 26, 2024, the Court granted preliminary approval to the Settlement. Doc. 26. Since this Court granted entered the Preliminary Approval Order, the Parties, in conjunction with the

Settlement Administrator, Analytics, have effectuated Notice consistent with the Settlement and Preliminary Approval Order. *See generally* Analytics Decl.

## III.    SUMMARY OF SETTLEMENT

### A.  The Settlement Class

The Settlement provides for the certification of the Settlement Class defined as "[a]ll individuals whose Private Information was compromised or potentially compromised in the Data Incident disclosed by Pinnacle in June 2023." S.A. ¶ 56.

Private Information includes, but is not limited to, names, addresses, Social Security numbers, additional personally identifiable information, and any other types of personally identifiable information that Defendant may have collected and maintained. S.A. ¶ 46. All members of the Settlement Class that do not opt-out of the settlement shall be referred to as Settlement Class Members.

### B.  Settlement Benefits

The Settlement establishes a $490,000 non-reversionary common fund (the "Settlement Fund") from which Pinnacle will provide Settlement Class Members with timely benefits targeted at remediating the specific harms they claim to have suffered as a result of the Incident. The benefits of the Settlement are available to all Settlement Class Members. The Settlement provides the following benefits to all Settlement Class Members who submit a valid claim:

*First*, Settlement Class Members are eligible to receive compensation for up to $2,000 through submission of a valid and timely claim and supporting documentation for their out-of-pocket losses, including documented Unreimbursed Economic Losses, lost time, and documented fees for credit reports, credit monitoring, or other identity theft insurance products that were incurred as a result of the Data Incident. S.A. ¶ 70. Documented ordinary out-of-pocket expenses

4

include unreimbursed bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel. S.A. ¶ 70(ii). The expenses must have been incurred between December 4, 2022, and the Claims Deadline, which is 90 days after notice is sent. S.A. ¶¶ 70(ii),74. Documents fees for credit reports, credit monitoring, or other identify theft insurance products purchased between December 4, 2022, and the Claims Deadline are also recoverable, subject to the $2,000 cap. S.A. ¶ 70(ii).

*Second*, , the Settlement also allows Settlement Class Members who have spent at least one full hour dealing with the Data Incident to claim up to six hours of lost time at $40 per hour, for a maximum of $240.00, by submitting a claim attesting to the number of hours spent responding to issues raised by the Data Incident and checking a box describing how the claimed lost time was spent. S.A. ¶ 70(iii). Claims for lost time may be combined with claims for documented out-of-pocket expenses and documented fees for credit reports, credit monitoring, or other identity theft insurance products and are subject to the same $2,000 cap. *Id.*

*Third*, Settlement Class Members, including those previously enrolled in the credit monitoring offered by Defendant at the time it provided notice of the Data Incident, shall have the ability to make a claim for three years of credit monitoring in three (3) years of one-bureau Credit Monitoring Services, which will include identity restoration services and $1 million in identity theft insurance, provided by Experian, or any other comparable provider. S.A. ¶ 70(i). This Settlement benefit bears with it significant value, and Pinnacle will pay for this benefit separate and apart from the other benefits offered by the Settlement. *Id.*

*Fourth*, in lieu of the Settlement Benefits for the aforementioned Out-Pocket-Costs Losses, Lost Time, and Credit monitoring, Settlement Class Members can elect to make a claim for a $100

5

Alternative Cash Payment. S.A. ¶ 70(iv). Submission for the $100 Alternative Cash Payment can

be made on or before the Claims Deadline and, significantly, requires no additional documentation.

     ***Fifth***, Separate from and in addition to the other Settlement Benefits described above,

Pinnacle agrees to implement or maintain additional data security measures and improvements.

S.A. ¶ 71.

### C.  Notice, Fees, Costs, and Service Awards

     The parties did not discuss or agree upon payment of attorneys' fees, costs, and expenses

or Plaintiff's service award until after they agreed on all material terms of relief to the Settlement

Class. Doc. 28-2, ¶ 10. Pinnacle will pay the costs of notice to the Settlement Class, costs of Claims

Administration, and the costs of dispute resolution through the Settlement Fund. S.A. ¶ 95.

Pinnacle will also pay for Plaintiff's attorneys' fees, costs, and expenses, and service award to

Plaintiff through the Settlement Fund, as approved by the Court. S.A. ¶¶ 125, 129. Plaintiffs filed

a motion seeking attorneys' fees of $163,333.33, litigation expenses of $18,668.33, and a service

award to Plaintiff of $5,000, subject to Court approval. Doc. 28.

     On July 3, 2024, Analytics received Settlement Class Member data from Defendant that

included files containing 10,011 records of names and addresses of Settlement Class Members.

Analytics Decl., ¶ 5. Of these, 37 were identified as duplicate records and three (3) records had

no mailing address listed, and thus were removed from the notice list. *Id.* Analytics then sent

postcard notice to a total of 9,971 unique Settlement Class Members (after updating addresses

using the United States Postal Service National Change of Address database). *Id.* ¶ 7. Of those

notices, very few were undeliverable, with 94.5% of the Settlement Class successfully receiving

direct notice. *Id.* ¶ 12.

Additionally, Analytics established the Settlement Website, www.PinnaclePropaneDataSettlement.com, where Settlement Class Members could obtain copies of the Settlement Agreement and Release, Long Form Notice, Postcard Notice, Claim Form, and the Court's Preliminary Approval Order. *Id.* ¶ 8. The Settlement Website also permitted Settlement Class Members to submit a claim form. *Id.* Analytics also established a toll-free phone number of (1-877-410-5068) and a dedicated email box (PinnaclePropaneDataSettlement@noticeadministrator.com) to receive and respond to Settlement Class Member inquiries. *Id.* ¶ 9. The phone number and email address were included in the Class Notice. *Id.*

In response to the Notice, no Settlement Class Members have opted out and there have been no objections to-date (the deadline to do so is November 13, 2024). *Id.* ¶ 13. The deadline for the submission of claims is December 13, 2024, and Analytics has already received a number of claims that they continue to review for validity. *Id.* ¶ 15. Additionally, on November 4, 2024, Analytics sent a reminder postcard notice to all Settlement Class Members who had not yet submitted a claim form. *Id.* ¶ 12.

## IV.    LEGAL STANDARD

Plaintiff brings this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides that a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2).[5] These factors are consistent with the common-law criteria that preceded Rule 23. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (laying out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 22019 U.S. Dist. LEXIS 151159, at *26 (S.D. Tex. Sept. 5, 2019). "When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003); *see also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant

---

[5] Here, there are no agreements between the Parties except those set forth in, or explicitly referenced in, the Settlement Agreement. Thus Rule 23(e)(2)(C)(iv) is irrelevant here.

circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

## V.    ARGUMENT

### A.  The Settlement is Fair, Reasonable, and Adequate

Under both the Rule 23(e) factors and the Fifth Circuit's *Reed* factors, the Court should grant Plaintiff's motion seeking final approval of this Settlement, which offers significant and immediate relief to the nearly 10,000 individuals affected by Pinnacle's Data Incident. As the Court held when it granted preliminary approval, the Settlement is "fair, reasonable, and adequate," and was negotiated at arms-length. Doc. 26 at pg. 2; *id.* ¶ 3. Nothing has changed since preliminary approval that should alter this assessment. In fact, the response of the Settlement Class to the Settlement (no requests for exclusion and no objections out of a class of nearly 10,000 people who were sent notice by first-class mail) further underscores that the Settlement is, in fact, fair, reasonable, and adequate. *See Burford v. Cargill, Inc*., No. 05-0283, 2012 U.S. Dist. LEXIS 161292, at *17 (W.D. La. Nov. 8, 2012) (approving a class settlement because "not a single class member objected to the settlement" and that "the existence of 2 opt-outs established that "the settlement process worked" while also showing there was not "dissatisfaction with the

settlement."). For these reasons, and for the additional reasons Class Counsel will show the Court below, the Court should finally approve the Settlement.

### 1. Plaintiff and Settlement Class Counsel Provided Excellent Representation.

Plaintiff and Class Counsel certainly satisfy the adequacy of representation factor under Rule 23(e)(2)(A). Plaintiff has no conflicts of interest with other Settlement Class Members, is not subject to any unique defenses, and she and her counsel vigorously prosecuted and continue to vigorously prosecute this case on behalf of the Class. *See generally* Doc. 28-2 ("Borrelli Fee Decl."). Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *See* id. ¶¶ 37-45; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases").

Class Counsel also conducted a thorough investigation of the facts both before and during the course of this action, including prior to engaging in mediation and negotiating the Settlement. This investigation allowed Class Counsel to have a "full understanding of the legal and factual issues surrounding this case" prior to reaching the Settlement. *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). Having completed their investigation and given the risks of no recovery at all, Settlement Class Counsel, together with Plaintiff, settled this matter in a way that not only provides timely and important benefits to the Settlement Class, but also avoids the expense and risk of ongoing litigation.

**2. The Settlement is the product of serious, informed, arm's-length negotiations.**

This Settlement is the result of a thorough investigation and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining."). The Parties engaged a well-respected and experienced mediator, Judge Jay Gandhi (Ret.) of JAMS, to assist them in resolving this case via mediation. Borrelli Fee Decl., ¶ 9 In the weeks leading up to the mediation, the parties exchanged key information needed to inform their strategies. *Id.* ¶¶ 8-9. Throughout all negotiations, Settlement Class Counsel and counsel for Pinnacle fought hard for the interests of their respective clients. *Id.* ¶ 11.

This exchange of information prior to settlement discussions and the involvement of a third-party mediator all weigh in favor of final approval as they demonstrate that negotiations were all at arms-length and supported by all relevant factual information needed. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage); *see also Quintanilla v. A & R Demolition Inc.*, 2007 WL 5166849, at *4 (S.D. Tex. May 7, 2007) (holding a class action settlement to be free of fraud or collusion when "[t]he settlement was reached through arms-length negotiations after a long, hard-fought mediation with a neutral").

### 3. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton*, 559 F.2d at 1331). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). Here, Pinnacle entirely denied liability for the Data Incident and in fact moved to dismiss Plaintiff's Complaint in its entirety prior to mediation.

This case is settling in its early stages; if the Settlement is not finally approved, the parties will likely need to litigate through multiple dispositive motions, a motion for class certification, a potential motion to decertify the class, and multiple *Daubert* motions, among other things. That process could take years to resolve, involve expensive expert discovery, and would not guarantee any greater benefits for the Settlement Class than what has been achieved through the Settlement. Moreover, the parties will bear the cost of this litigation if it continues. While Plaintiff believes she has strong claims and would be able to prevail, an early resolution, before both sides spend time and money on litigation is in the best interest of the Settlement Class. *Ayers*, 358 F.3d at 369 ("Settling now avoids the risks and burdens of potentially protracted litigation.").

### 4. The State of Litigation and the Available Discovery.

Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (quoting *Ayers*, 358 F.3d at 369). "A settlement can be approved under this factor even if the parties have not conducted much formal

discovery." *Id.* (citations omitted). The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999). "The Court should consider all information which has been available to all parties." *DeHoyos v. Allstate Corp.*, 240 F.R.D. at 292 (W.D. Tex. Feb. 21, 2007).

Here, during the settlement negotiations and prior to mediation, Pinnacle produced significant information about the scope of the Data Incident, the number of potential class members, the scope of the Data Incident, and the Defendant's remedial efforts. Doc. 28-2, ¶ 9. Drawing on their significant and substantial experience in other data breach class action litigation, Class Counsel were able to determine the Settlement's adequacy in relation to the probability of success on the merits were this litigation to continue. *Id.*, ¶¶ 19-21. Because the parties "possess ample information with which to evaluate the merits of the competing positions," *Ayers*, 358 F.3d at 369, this factor also favors final approval of the proposed settlement. *See Reed*, 703 F.2d at 172.

### 5. The Settlement Terms Appropriately Balance the Merits of Plaintiff's Claims and the Likelihood of Success with the Attendant Risks.

When evaluating a proposed class action settlement, "the most important factor is the [fourth Reed factor,] probability of plaintiffs' success on the merits." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172 (5th Cir. 1983)). At the same time, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.* (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of

success on the merits is not absolute. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d

1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving

the settlement when the class faced major obstacles in establishing proof of liability and damages);

*Combustion*, 968 F. Supp. at 1128 ("On the other hand, Plaintiffs will have very serious legal and

evidentiary hurdles to meet in order to get their case to the jury.").

Similarly, the fifth *Reed* factor—the range of possible recovery—concerns "whether the

range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of

proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290-91. Both of these factors likewise

weigh in favor of final approval.

As outlined above, this Settlement guarantees Settlement Class Members real relief for

harms and protections from potential future fall-out from the Data Incident. The Settlement meets,

or even exceeds, similar to results obtained in other data breach cases, further supporting that this

settlement is fair and adequate such that it should be approved. *See, e.g. Corra v. ACTS Ret. Servs.*,

No. 22-2917, 2024 U.S. Dist. LEXIS 500 (E.D. Pa. Jan. 2, 2024) (preliminary approving data

breach settlement on behalf of 20,754 class members with a $350,000 cap on monetary claims that

provided up to $3,500 for extraordinary losses, up to $350 in ordinary out-of-pocket losses, up to

$75 in lost time, and two years of credit monitoring); *Mowery v. Saint Francis Healthcare Sys.*,

No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280

in value to Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses

and time spent dealing with the data breach and credit monitoring services valued at $100); *Baksh

v. IvyRehab Network, Inc*., No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per

class member for out-of-pocket expenses incurred related to the data breach and $20

reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for

claimants; and equitable relief in the form of data security enhancements); *Rutledge, et al. v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement of up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Linnins v. HAECO Ams., Inc.*, No. 16-cv-486, 2018 WL 5312193, at *1-3 (M.D.N.C. Oct. 26, 2018) (settlement included $312,500 claim fund for reimbursement of specified expenses to employees whose PII was allegedly disclosed in breach).

The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. Should litigation continue, Plaintiff would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to the rapidly evolving law and minimal Fifth Circuit guidance on data breach jurisprudence, this case faces uncertainties. Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex area of the law given the need to show the technicalities of how the breach occurred, how it should be prevented, and precisely what information was impacted. Moreover, the damages methodologies, while theoretically sound in Plaintiff's view, remain unproven in front of a jury. Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Another significant risk faced by Plaintiff here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiff "necessarily risk[ed] losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). While Plaintiff

15

disputes any defenses Pinnacle asserts and is confident that class certification, and ultimately a class judgment, is achievable, success is not guaranteed. But through the Settlement, Plaintiff and the Settlement Class gain significant benefits without having to face the risk of recovering no relief at all.

      **6.  Class Counsel and Plaintiff Believe the Settlement is in the Settlement Class's Best Interest.**

Plaintiff and Class Counsel firmly believe that this Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class, which is an important consideration in any class settlement analysis. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co*., 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."). Here, Settlement Class Counsel are highly experienced in class action litigation generally, and data breach litigation in particular, and are well positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. The assessment of Class Counsel weighs in favor of final approval. *See Stott v. Capital Financial Services*, Inc., 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'") (quoting *Cotton*, 559 F.2d at 1330).

      **7.  The Effectiveness of the Proposed Method of Distributing Relief to the Class Supports Final Approval.**

Subject to Court approval, eligible claims will be paid either electronically or by written check. Settlement checks and credit monitoring codes will be delivered by the Settlement

16

Administrator to Settlement Class Members after the Effective Date. This is a simple, clean, and effective distribution process.

### 8.    The Settlement Treats Class Members Equitably Relative to Each Other.

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provided for a notice plan that is designed to reach as many Class Members as possible and provided Class Members with direct mail notice of the Settlement. It also informed Class Members of their right to object to, or opt out of, the Settlement. All Class Members were eligible to make a claim for the same categories of monetary relief and/or to elect the credit monitoring service. Thus, the Settlement treats Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

### 9.    Reaction of Settlement Class Members.

The reaction of the Settlement Class to this Settlement is overwhelmingly positive. Out of a class of nearly 10,000 individuals, no one requested exclusion and there were no objections. *See* Analytics Decl., ¶ 12. A number of valid claims have already been submitted, with the claim deadline still over one month away, indicating that Settlement Class Members are taking advantage of the availability of the Settlement benefits. *Id.* ¶ 14. These benefits, which directly address the harm claimed in this case, may not have been available at all to Settlement Class Members without this Settlement.

### B.  The Court Should Finally Certify the Settlement Class

Settlement classes are routinely certified in consumer data breach cases. There is nothing unique about this case that would counsel otherwise. This Court already found when it preliminarily approved the Settlement that it likely would certify the Settlement Class. The Settlement Class still meets the requirements of numerosity, commonality, typicality, and

adequacy, and because common issues predominate and a class action is the superior means by which to resolve class member claims, the Court should finally certify the Settlement Class for settlement purposes. Where nothing has changed relative to the Rule 23(a) and pertinent Rule 23(b) factors since preliminary approval, that decision should be made final, for the reasons set forth in the Plaintiff's Preliminary Approval Motion and Supporting Memorandum. *See* Doc. 19. For completeness purposes, the reasoning in favor of final certification of the Settlement Class pursuant to Rule 23 is laid out below.

*Numerosity*. Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has found that a class of 100 to 150 members "is within the range that generally satisfie[s] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class of nearly 10,000 satisfies numerosity.

*Commonality*. Commonality requires Plaintiff to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and are capable of generating common answers "apt to drive the resolution of the litigation," even where the individuals are not identically situated. *See In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *Nelson v. Constant*, 2020 WL 5258454, at *5 (quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)). Plaintiff here easily meets the commonality requirement because she can demonstrate numerous common issues exist, including whether Defendant had a duty to use reasonable care in

18

safeguarding Plaintiff's and the Class's PII, whether Defendant was negligent in maintaining, protecting, and securing PII, and whether Defendant breached contract promises to safeguard Plaintiff and the Class's PII.

*Typicality*. Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); Fed. R. Civ. P. 23(a)(3). Here, Plaintiff's and Settlement Class Members' claims all stem from the same event—the cybersecurity attack on Pinnacle's computer system—and whether Pinnacle took reasonable steps to protect Plaintiff's and Settlement Class Members' data.

*Adequacy*. To be adequate, Plaintiff must establish that: (1) there is no antagonism or conflict of interest between the Class Representative and other class members; and (2) counsel and the Class Representative are competent, willing, and able to protect the interests of absent class members. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, Plaintiff's interests are aligned with those of the Settlement Class as they are all victims of the Data Incident and all entitled to the same relief under the Settlement. And Settlement Class Counsel is adequate based on their significant experience litigating data breach class actions. Doc. 28-2, Exs. C, D.

*Predominance*. "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). In this case, key predominating questions are whether Pinnacle had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiff and the Settlement Class Members, and whether Pinnacle breached that duty. The common questions

19

that arise from Pinnacle's conduct predominate over any individualized issues. This satisfies the

predominance element. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance

satisfied in data breach case despite variations in state laws at issue, concluding such variations

went only to trial management, which was inapplicable for settlement class); *Hapka v.*

*Carecentrix, Inc.*, Case No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2, 2018 U.S. Dist.

LEXIS 68185 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case,

stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident

and [defendant's] alleged conduct predominate over any individualized issues").

    ***Superiority***. The resolution of thousands of claims in one action is far superior to litigation

via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial

efficiency and conservation of resources over the alternative of individually litigating thousands

of data breach cases arising out of the same Data Incident. Because the common questions of fact

and law that arise from Pinnacle's conduct predominate over any individualized issues, and a class

action is the superior vehicle by which to resolve these issues, and the requirements of

Rule 23(b)(3) are met. Thus, the class should be finally certified for settlement purposes.

### C. The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process.

    To satisfy due process, notice to class members must be the best practicable, and

reasonably calculated under all the circumstances to apprise interested parties of the pendency of

the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips*

*Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient

to allow class members "a full and fair opportunity to consider the proposed decree and develop a

response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While

individual notice should be provided where class members can be located and identified through

reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). Analytics mailed notice directly to 9,971 Settlement Class Members. Analytics Decl., ¶ 7. The Short Notice provided

an overview of the settlement terms, the benefits available, the options available to Class Members, and the settlement website and toll-free number where additional settlement information could be obtained. *Id.*, Ex. B. After re-sending undeliverable notices following an advanced address search, Analytics believes that notice reached 94.5% of the Settlement Class. *Id.* ¶ 12. This is an excellent result. *Id.*

In addition to the direct mail notice, Analytics established a dedicated website for the Settlement where relevant documents were posted for Settlement Class Members to review. *Id.* ¶ 8. Also, Analytics established a toll-free telephone number where Settlement Class Members could call and obtain additional information regarding the Settlement. *Id.* ¶ 9.

In sum, the Settlement Administrator and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23 and satisfies due process requirements. The Notice Plan provided the best notice practicable and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court enter an order finally approving the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), certifying the Settlement Class for purposes of judgment on the Settlement, and incorporating its prior Order granting the request for attorneys' fees, expenses, and service awards.

Dated: November 4, 2024             Respectfully Submitted,

By: */s/ Raina C. Borrelli*
Raina C. Borrelli (*pro hac vice*)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, IL, 60611

22

Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

Joe Kendall
KENDALL LAW GROUP PLLC
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX 75219
Telephone: (214) 744-3000
Facsimile: (214) 744-3015
jkendall@kendalllawgroup.com

*Attorneys for Plaintiff and the Proposed Class*

23

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that on November 4, 2024, I conferred with John Vogt, counsel for Defendant, regarding the substance of this motion and he stated that defendant does not oppose the relief requested herein.

By: <u>*/s/ Raina C. Borrelli*</u>
Raina C. Borrelli
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

24

<u>**CERTIFICATE OF SERVICE**</u>

I, Raina C. Borrelli, hereby certify that on November 4, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.


DATED this 4th day of November, 2024.

STRAUSS BORRELLI PLLC

By: *<u>/s/ Raina C. Borrelli</u>*
    Raina C. Borrelli
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N Michigan Avenue, Suite 1610
    Chicago IL, 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109
    raina@straussborrelli.com